UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 3:09-cr-00112-RLM |
| JOHN R. HARRIS | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by counsel, David Capp, United States

Attorney for the Northern District of Indiana, and files this its sentencing memorandum as

follows:

On August 28, 2009 the defendant was charged by complaint. R. 1. The complaint

charged Harris with one count of using a facility of interstate or foreign commerce to persuade

induce, entice a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2422. *Id.*

On September 10, 2009, the defendant was indicted on two counts: Count 1: Sexual Exploitation

of Children in violation of 18 U.S.C. § 2251(a), and Count 2: Possession of Child Pornography

in violation of 18 U.S.C. § 2252(a)(4)(B). R. 16. On March 9, 2011, the defendant was charged

with seven counts in a superceding indictment. R.60. Counts 1 - 3 each alleged Sexual

Exploitation of Children in violation of 18 U.S.C. § 2251(a), each involving separate victims

alleged as Jane Doe #1, #2 and #3. Counts 4 to 6 each alleged Distribution of Child Pornography

in violation of 18 U.S.C. § 2252(a)(2) on separate dates of January 11, February 16, and August

24, 2009. Count 7 alleged Possession of Child Pornography in violation of 18 U.S.C. §

2252(a)(4)(B) on September 3, 2009. *Id.* On June 21, 2011 Harris pled guilty to Count 1 of the

1

indictment, which alleged Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a).

R. 78-80. The victim in this count of the indictment, Jane Doe #1 was his former step daughter.

See Revised Sentencing Report and Addendum (herinafter "PSR"), ¶ 20.

The PSR, dated September 14, 2011, has been objected to by the defendant, who objects

to paragraph 36, which allocates a two level enhancement pursuant to U.S.S.G. 2G2.1(b)(5)

because the defendant had supervisory control over the minor involved in this offense. PSR at

18. The probation officer stands by the report, citing ¶ 9(b) of the plea agreement, R. 78, which

states "I admit that Jane Doe No. 1 was a minor that was under

my care or supervisory control." Aside from this clear admission, the facts also support the

enhancement. Jane Doe No. 1 was living with the defendant at the time of the offense. Her

mother had died when she was younger, and she lived part time with her grandmother, Linda

Sage, and part time at the defendant's house. Another of the victims, Jane Doe No. 2, a close

friend of Jane Doe No. 1, also stayed at the defendant's home frequently. Application note 3 to

this guideline says:

> 3. Application of Subsection (b)(5).
> A) In General.--Subsection (b)(5) <u>is intended to have broad application and
> includes offenses involving a minor entrusted to the defendant, whether
> temporarily or permanently.</u> For example, teachers, day care providers,
> baby-sitters, or other temporary caretakers are among those who would be subject
> to this enhancement. In determining whether to apply this adjustment, the court
> should look to the actual relationship that existed between the defendant and the
> minor and not simply to the legal status of the defendant-minor relationship.

U.S.S.G. 2G2.1, Application Note 3 (emphasis added). Therefore the guideline clearly fits the

situation present in this case. *See United States v. Carson*, 539 F.3d 611, 612 (7th Cir.

2008)(finding that mother's boyfriend could have joint custody of visiting child with the mother

and upholding the enhancement).

The Revised PSR calculates a guideline range for this defendant of 262 to 327 months. PSR ¶94. The fine range is from $25,000 to $250,000 PSR ¶ 103. The defendant has no ability to pay a fine. ¶ 92. Supervised release upon completion of the sentence of confinement is from 5 years to life. PSR ¶98. The statutory maximum (lifetime supervision) is recommended. *Id.*

In the plea agreement, the government did not agree to recommend a sentence at the low end of the guideline range. Plea Agreement, ¶9(i)(2). The government has recommended a one level reduction and below recommends a two level increase for obstruction of justice. If the Court agrees with these recommendations, the defendant would have a total offense level of 39 and a criminal history category of II, yielding a guideline range of 292 to 365 months (with a maximum sentence of 360 months due to the statutory limitation of 30 years for Count 1). For the reasons below, the government recommends a sentence of 326 months, or 28 years, to be followed by lifetime supervised release, no fine, and $100 special assessment.

The application of 18 U.S.C. § 3553(a) factors supports the recommended sentence. These factors include the following:

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

The factual basis of the offense are contained in paragraphs 9 to 22 of the PSR. The nature and circumstances of the offense are aggravating in several ways that would justify a sentence at the high end of the guideline range: the defendant's relationship to the victims involved, the manner in which the defendant enticed the victims to provide nude images to him by promising them money in exchange for their nude photos, and the manner in which the

defendant attempted to subvert the criminal process by his continual charade regarding his competency (as discussed below).

The history and characteristics of this defendant are also very aggravating. In addition to the minor victims in Counts 1-3, the investigation found images that the defendant had created using photo software where he had taken the face of an ex-girlfriend's daughter, A. E., and placed it onto existing child pornography images, creating an image with that child's face on a nude body, and made the photograph available for download over the internet with a file name that contained the girl's real name. This has caused her mother, K.E., tremendous concern and effort to have these images removed from internet sites. Furthermore, as detailed in her victim impact statement, the defendant surreptitiously took nude photographs of K.E. during their relationship. When she terminated the relationship, the defendant posted those nude photographs online, with K.E.'s name. K.E. also reports that the defendant had a license plate and coffee cup made with her nude photographs on them, and was using the coffee cup at a restaurant in Elkhart, IN. The defendant also created an image of another ex-girlfriend's grand-daughter, A.R. in the same way as he did A.E., and distributed that photograph on the internet using that child's first name only. The defendant's use of these innocent minors to somehow harm his ex-girlfriends is unconscionable. When agents searched the defendant's home they found a framed collage of the images discussed above, and others, on the wall in the home (where Jane Doe #1 and her friends sometimes stayed with him). The government intends to present victim impact testimony of K.R. (A.R.'s mother) and possibly K.E. at the sentencing hearing.

**(2) the need for the sentence imposed--**
**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

A sentence of 324 months for a 46 year old offender will be a very significant sentence, and will adequately reflect the seriousness of the offense. This sentence will also adequately promote respect for the law, and provide just punishment for the offense.

**(B) to afford adequate deterrence to criminal conduct;**
**(C) to protect the public from further crimes of the defendant; and**

A sentence of 324 months will provide adequate deterrence to others who may contemplate committing similar crimes. More importantly, 324 months will also adequately protect the public from further crimes of the defendant, who poses a high threat of future criminal conduct and victimization of children. Assuming good time credit, when released the defendant will be nearly 70 years old.

**(3) the kinds of sentences available;**
**(4) the kinds of sentence and the sentencing range established   for--**
**(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--**

These factors support a sentence within the guideline range because they argue for uniform sentencing practices, and the guidelines are designed to achieve this outcome: "The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir.2005).

**(5) any pertinent policy statement--**

The government is unaware of any policy statements that apply in this case.

**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

Once again the guidelines are the best method of avoiding sentencing disparities.   "A

within-guidelines sentence necessarily gives weight and consideration to avoiding unwarranted sentencing disparities." *United States v. Bartlett*, 567 F.3d 901, 907-08 (7th Cir.2009)

## Obstruction of Justice Enhancement

The PSR does not recommend that the defendant receive an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  PSR ¶ 26, 41.

The government objects to paragraphs 26 and 41 because it believes that the defendant should be held accountable for obstruction of justice with regard to his feigned mental illness under U.S.S.G. 3C1.1.  That provision states that:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

In this case the record shows a pattern of malingering by the defendant.  During his initial interview with investigating agents on September 3, 2009, the defendant began hitting himself in the head and curling himself into a fetal position.  During his initial appearances at Court, the defendant also was uncommunicative.  On September 16, 2009, the Court set a trial date of December 8, 2009.  R. 19.  On September 18, 2009 defense counsel filed a motion for an examination to determine the defendant's competency. R. 22.  The Court granted that motion, R. 25, which resulted in the original trial date being continued.  R. 28.  On November 30, 2011, the Court granted an extension of time to determine the defendant's competency based on a request by medical personnel.  R. 30.  In a report dated December 23, 2009, the examining psychologist concluded that additional time was necessary for observation, testing and evaluation.

As a result of this letter, the Court, on February 19, 2010, found Mr. Harris mentally

incompetent, and committed him to the custody of the Attorney General for four months. R. 34. On September 23, 2011, the Warden, USMC Springfield requested additional time to complete the treatment of Mr. Harris, R. 50, and on October 4, 2010, the Court extended the time until January 7, 2011. R. 51. Prior to this extension, the Court received two letters allegedly from another person written on behalf of John Harris which enclosed notes and pictures from John Harris. R. 45, 46. Both letters purport to be signed by a "Bryan," however, the handwriting looks much like subsequent letters received from Harris himself. The "note" from defendant attached to the first of these letters stated: "Do you like me ok I am nice. I am no do Bad. I miss my mom and my cat and my S dad. I go to my mam and S dad. I be good I do not want TV I got M+M's. OK John Harris." It also contained a drawing of three figures and a cat. R. 45. The second "note" stated "Hi it me John you ok you see my mom. My mom got my cat you like cats I bo yo mad at me? I want my mom. OK I go. John." R. 46. The government contends that these letters are transparent attempts to appear to be incompetent to the Court.

From January 24, 2011 to February 16, 2011, five letters were filed with the court supposedly written by another person, and signed by John Harris indicating that Mr. Harris would only plead to "the blood of Jesus" or other similar words. R. 52-56. Although these letters purport to be written by another person, the handwriting appears to be similar to other letters subsequently written by Mr. Harris. R. 73. The last of these letters, filed February 16, 2011 requested an independent mental examination. R. 56. Once again, the government contends that these letters are transparent attempts to appear to be incompetent to the Court.

On February 14, 2011, the Court received a psychiatric report dated January 19, 2011. R. 58. The contents of the report will not be quoted, but the conclusion was contrary to the

defendant's incompetent behavior. Furthermore, Harris's spate of false letters to the Court, R. 52-56, although not dated, appear to post date when Mr. Harris would have learned of the psychiatrist's opinion, giving further credence to the idea that they were designed to counter the psychiatrist's opinion.

Harris was subsequently returned to custody in South Bend, IN , where after a scheduling conference with the Court on March 9, 2011, R. 59, he filed two letters with blood spatters with the Court on April 8 and 11, 2011. R. 62 and 63. These letters also mentioned pleading "the blood," asked that his attorney be replaced by God, and are also patently designed to feign incompetence. R. 62, 63. On April 20, 2011, Harris filed two more letters requesting the appointment of new counsel, R. 67, 68, the second of which again said that God was his counsel. However, at a hearing on the same day, Harris did not persist in his request for new counsel, which was therefore denied. R. 69.

On May 23, 2011, Harris filed another letter requesting new counsel, R. 73, which was denied at a hearing on June 2, 2011. R. 75. A final letter requesting new counsel was filed on June 15, 2011. R. 77. Two days later the government filed a plea agreement signed by Harris in which he stated that "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me." R. 78, ¶ 11. At the plea hearing on June 21, 2011, Harris appeared to be aware and competent, as noted by both attorneys and by the Court. R. 80.

As detailed above, it appears that the defendant engaged in a pattern and practice of deception regarding his competence that persisted from his initial interview with investigating agents on September 3, 2009 until his plea hearing on June 2, 2011. During this time he was transported by the United States Marshal's service to and back from the U.S. Medical Center in

Springfield Missouri twice, and underwent literally months of evaluation by a psychiatrist, all because of his malingering. Every court of appeals to have addressed this issue has found, under similar circumstances, that this sort of malingering will qualify a defendant for an obstruction of justice enhancement under U.S.S.G. § 3C1.1. *See United States v. Batista*, 483 F.3d 193, 197-98 (3d. Cir 2007)(enhancement appropriate where defendant feigns mental illness); *United State v. Patti*, 337 F.3d 1317, 1320, 1325 (11th Cir. 2003)(enhancement found to apply where defendant's "malingering postponed the trial for a year and forced the government to waste time and resources evaluating his competency."); *United States v. Greer*, 158 F.3d 228, 241 (5th Cir 1998)(enhancement applied where "there was evidence that Greer engaged in a sustained pattern of appearing more impaired than he was."). The government therefore contends that U.S.S.G. § 3C1.1 applies.

## CONCLUSION

As discussed above, the government requests that the defendant be sentenced to 326 months, or 28 years, to be followed by lifetime supervised release, no fine, and $100 special assessment.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:      s/ John Maciejczyk
John M. Maciejczyk
Assistant United States Attorney
Internet Address:
John.Maciejczyk@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and electronically served a copy thereby on counsel for defendant.

          s/ John Maciejczyk             
John Maciejczyk